## JONES v. HOYT.

The plaintiff, a shipmaster, contracted with the defendant to transport a quantity of lumber from New York to San Francisco. The bill of lading provided that the lumber should be delivered to D., he paying freight for the same according to a certain stipulated rate. Across the face of the bill of lading were written the words, " The lumber to be piled and measured on the deck of the vessel, and freight settled according to that measurement; " and on the margin the following: "Freight payable in specie or its equivalent before delivery of the goods, and to be received by the consignee within reach of the vessel's tackle, and if not taken within ten days after arrival, the master to be at liberty to land the same at the expense and risk of the goods, and sell sufficient to pay all charges." On the back was the following, signed by the defendant: " I guarantee the payment of the within named freight." The consignee having died before the arrival of the vessel, the plaintiff advertised for an agent of the defendant to take charge of the lumber. An agent appeared, but declined to pay the freight, and abandoned the lumber to the plaintiff, who thereupon caused a protest to be made, and after waiting ten days, proceeded to measure and dispose of the lumber. In measuring it, a part, as a matter of convenience, was piled on the dock at which the vessel lay. The plaintiff sold it afterward at auction, in gross, for less than enough to pay the freight and primage and expenses of sale, an agent of the plaintiff bidding it in for his benefit. He afterward sold it at retail at a considerable advance, but still for less than the amount of the freight and primage and expenses of sale. Of these sales, supposing himself to be the owner of the lumber, he kept no accurate account.

In an action brought by the plaintiff, to recover the balance of the freight and primage, it was held:

1. That the measurement of the lumber on the deck was not a condition precedent of the right of recovery, the provision for such measurement being intended, either to enable the plaintiff to retain possession of the lumber until the freight should be paid, in which case he would have the right to waive the benefit of it; or as an appointment of a convenient place for the defendant's agent to meet the plaintiff, for the purpose of making such measurement, in which case it had become, in the circumstances, unimportant.

2. That parol evidence was inadmissible to show that the guarantee of the defendant was intended by the parties as a security for the payment of the freight, in the place of the lien which the plaintiff would otherwise hold on the lumber, and to prevent a sale of the lumber for the payment of the freight; such evidence contradicting the bill of lading, which provided that the freight should be paid before the lumber was delivered.

3. That the plaintiff was not bound, before bringing suit, to give the defendant notice of the measurement of the lumber, as the parties had equal means of information, and the neglect of the defendant's agent ought not to impose an additional burden in this respect on the plaintiff.

4. Nor to give the defendant notice of the proceeds and expenses of the sales ; since the plaintiff was suing only for his freight and primage, and the question how far he was chargeable for the lumber, arose only on the defense.

The declaration in such action containing, in addition to a special count setting out the contract between the parties, two other counts of a general character, it was held, upon a claim of variance between the contract proved and that alleged in the special count, that, the verdict being general, and under our practice sustainable upon any sufficient count of the declaration, the question of variance, affecting only the special count, was unimportant.

Where, on the trial of such action, the court charged the jury, that the plaintiff was to be treated as the agent of the defendant in such sales; that as such agent he was accountable for the lumber at the highest price for which it was in fact, or by reasonable diligence could have been, sold at that time in San Francisco; that while, as a general rule, an agent should be held to a strict accountability, and ought to keep accurate accounts of his dealings, yet that if the plaintiff had conducted fairly, obtaining the best prices that by reasonable diligence could be obtained, and accounting honestly according to his best means, and had explained to the satisfaction of the jury his neglect to keep exact accounts, and such neglect involved no gross carelessness or dishonesty on his part, he ought to be allowed, out of the proceeds of the lumber, all the necessary expenses of managing and disposing of the same, and a reasonable compensation for his services : on a motion for a new trial by the defendant, it was held that such charge was correct.

THIS was an action of assumpsit, brought to recover the freight and primage on a quantity of lumber, transported by the plaintiff for the defendant from New York to San Francisco.

The declaration contained one count setting forth specially the contract between the parties and the plaintiff's proceedings under it, and two counts of a more general character. It is given in full, in the report of a former trial of the same case before this court. 21 Conn. R., 157.

The case was tried on the general issue closed to the jury, at the term of the superior court for the county of Fairfield, holden in March, 1856.

On the trial the plaintiff read in evidence the following bill of lading, with the accompanying agreements and memoranda.

" Shipped in good order and condition by James H. Hoyt, on board the bark called the Z. Ring, whereof Townsend Jones is master, now lying at the port of New York, and bound for San Francisco.

[Here follows a schedule of the lumber.]

Being marked and numbered as in the margin, and are to be delivered in the like order and condition at the port of San Francisco, (the dangers of the sea only excepted), unto Aaron Dean, or to his assignees, he or they paying freight for the same at the rate of fifty-eight dollars per thousand feet, eighty-three and one-third cubic feet being taken for a thousand, with primage and average accustomed. In witness whereof, the master or purser of the said vessel hath affirmed to four bills of lading, all of this tenor and date, one of which being accomplished the others to stand void.

"Dated in New York, the 7th day of Jan., 1850.—T. J."

On the margin was the following:

"57,602 a $58 - - $3,340.91

5 per cent. primage, - - 167.05—$3,507.96"

Also the following: "Bark to have the privilege of one or more ports for refreshments. Number of pieces unknown; all on board to be delivered. Freight payable in specie or its equivalent before delivery of the goods, and to be received by the consignee within reach of the vessel's tackle, when the vessel is ready to deliver them, and if not taken within ten days after the arrival of the vessel, the master to be at liberty to land the same at the expense and risk of the goods, and to sell sufficient to pay all charges. Not accountable for splits or breakage."

Across the face of the bill of lading was the following: "The lumber to be piled up and measured on the deck of the vessel, and freight settled according to that measurement, the expense of the same to be paid equally by the vessel and the consignee."

Across the back of the bill of lading was the following, signed by the defendant: "I guarantee the payment of the within freight. New York, January 7, 1850."

It was admitted that the lumber mentioned in the bill of lading was duly transported to San Francisco by the plaintiff, and arrived there about the first of August, 1850, and that before its arrival, the consignee had died.

The plaintiff claimed, and offered evidence to prove, that

upon his arrival with the lumber at San Francisco, he advertised for a consignee to come forward and take charge of it; that thereupon one Lockwood appeared as the defendant's agent, and at first expressed an intention to take charge and dispose of the lumber and pay the freight thereon; but after inquiring into the state of the market, declined to pay the freight, abandoned the lumber to the plaintiff, and told him he must dispose of it as he thought proper; and that thereupon the plaintiff caused a protest to be made, and that after said abandonment, no person appeared who professed to have anything to do with the lumber on the defendant's account.

That for the purpose of ascertaining the quantity of the lumber, he caused so much as could be conveniently put upon the deck of his vessel at one time, to be there piled, and the residue to be piled upon the wharf against which the vessel was lying, and with the assistance of one Slate, a disinterested and competent person, measured it in said two piles, and found the quantity to be 4,166 cubic feet, or 50,000 feet in board measure; that the lumber could not have been all piled for measurement on the deck of the vessel without great inconvenience and additional labor and expense; that it was properly piled and accurately measured; and the plaintiff admitted that no other measurement was made. To the admission of this evidence as to the measurement, the defendant objected, as variant from the averments regarding it in the declaration, but the court overruled the objection and admitted it.

The defendant claimed that the plaintiff was not entitled to recover in this suit, because, as he claimed, after his arrival at San Francisco, he had taken and sold the whole of the lumber, and received and still retained the proceeds thereof, and as the agent of the defendant was accountable to him for such proceeds; and that upon such sale the lumber in fact produced, or by the use of reasonable and ordinary diligence and skill would have produced, more than enough to have paid all reasonable charges and expenses, with the freight and primage.

The plaintiff admitted that he had sold the lumber and received the proceeds, but he claimed that he had stored it, after his arrival at San Francisco, a considerable period, for which he was entitled to compensation, and had paid out large sums for necessary expenses incident to the care and disposal thereof, and had devoted his own time to the sale thereof, and was entitled to compensation for such storage and services, and to remuneration for such expenses, to be deducted from the proceeds ; and that after making such deductions, the amount of the proceeds remaining in his hands was altogether insufficient to pay him the amount of freight and primage for the recovery of which this suit was brought; and he offered evidence to prove that, after the measurement of the lumber, he caused the same to be advertised for sale, and put up at public auction ; and that at such auction it was bid in for him, by his agent, at the price of thirty-five dollars per thousand feet, board measure, and that thereupon, supposing himself the legal owner, he took possession of it, and afterward sold it in parcels to sundry individuals at different times, between the 17th of August and the 12th of October, 1850 ; and that the lumber upon such sales produced less than the sum of $2,400 in the whole, without deducting any charges or expenses. That in all his proceedings relating to the disposal of the lumber, he acted as he honestly supposed his duty toward the defendant required ; that he procured the lumber to be bid in for himself in good faith, supposing it was legal and right for him so to do, and believing that he was thereby promoting the interest of the defendant, and that he had by such purchase at auction become the legal owner of the lumber, and was accountable for it to the defendant at the rate of thirty-five dollars per thousand, and had no account to render to any one of his subsequent sales, or of his charges or expenses in relation thereto, and therefore had kept no account thereof, and he admitted that the account thereof exhibited upon the trial, was recently made and from his recollection alone.

The plaintiff also claimed, and offered evidence to prove,

that in the disposition of the lumber after said auction, he acted in good faith, and sold it for the best prices he could obtain, and the best that by the exercise of reasonable diligence and skill could be obtained; that said account was substantially correct; that his charges therein were warranted by the usages of the trade, and were reasonable and proper, although he admitted that he could not now recollect the exact amount received by him for each of the several parcels of lumber sold, or the dates of such sales, or the names of the persons to whom they were made, or the exact sums paid for expenses, or to whom such payments were made.

The defendant claimed, and offered evidence to prove, that by the use of reasonable diligence the plaintiff could have obtained better prices for the lumber; that the plaintiff refused to deliver it to Lockwood without the payment of the freight thereon, and kept it on hand an unnecessary and unreasonable length of time upon expense, before selling. And he claimed that the plaintiff had no legal right to sell the lumber at all, for the payment of his freight out of the proceeds, but was bound to deliver it to Lockwood, and rely upon the defendant's guaranty for his freight; and he offered the testimony of a witness to prove that the guaranty was intended by the parties to secure the plaintiff for the freight, and prevent the sale of the lumber for the payment thereof in any contingency. To this evidence the plaintiff objected, and the court rejected it.

No evidence was offered that before the commencement of the suit the plaintiff had given the defendant any notice of his demand in this suit, or made any demand for the payment thereof, or had rendered to the defendant any account of the sales of the lumber, or of his charges or expenses in relation thereto; and the defendant requested the court to charge the jury, that without such prior notice, demand and account, the plaintiff was not entitled to recover.

The defendant also claimed that the plaintiff, having kept no account of his sales, was to be charged with the highest prices which could have been procured at that time, and as

he had made no account of his services or expenditures in relation to the lumber or the keeping or sale thereof, he was not entitled to any allowance out of the proceeds on account of such charges or expenses, or any allowance for his own services, either as commissions or otherwise, (it being admitted that no special agreement for such commissions or other compensation had been made,) and he prayed the court so to charge the jury; and also to instruct them that the stipulation contained in the bill of lading regarding the measurement of the lumber on the deck of the vessel, was in the nature of a condition precedent to the plaintiff's right to recover his freight, and that the lumber not having been so piled and measured, the plaintiff was not entitled to recover.

The court charged the jury:

That it being agreed that the lumber was in fact transported to the port of delivery as the bill of lading required, if the jury should find that upon the arrival of the vessel at San Francisco, the plaintiff used all reasonable measures, by advertising or otherwise, to procure the appearance of a consignee, or other person authorized to receive the lumber and act for the defendant in regard to the measurement and disposition of it, and that no person appeared for that purpose, or having appeared, finally abandoned the property to the plaintiff before its measurement; and that in removing part of it to the wharf and measuring it there, the plaintiff acted reasonably under all the circumstances, then he would not be precluded from receiving his freight and primage, by the provision in the bill of lading regarding the measurement of said lumber on said vessel's deck; and that the action being for the recovery of such freight and primage, notice and demand of the plaintiff's claim were not necessary before the commencement of the suit, nor was the rendition by the plaintiff to the defendant of an account of the sales of said lumber, or of his charges for storage, services and expenses growing out of the disposition of the lumber after its arrival at San Francisco, necessary to entitle the plaintiff to a verdict in this suit.

That the plaintiff having sold the lumber after its arrival at the port of delivery, and the defendant having now elected to consider and treat the plaintiff as his agent in that transaction, for the purposes of this defense, the plaintiff was to be treated as such agent.

That as such agent he was accountable for said lumber at the highest prices for which it in fact was, or by the use of reasonable diligence could have been, sold at that time at San Francisco.

That an agent should be held to a strict accountability for goods entrusted to him for sale, and ought in general to keep accurate and particular accounts of all his dealings with such goods, and that if he has omitted to keep such accounts, every presumption consistent with the known facts in the case, is to be made against him. But that such general rule must be taken subject to reasonable modifications by the circumstances of the particular case in which it is to be applied, and that in certain cases, as when the property consists of a single article or a small number of articles, or a single sale or a small number of sales are made, such account may be dispensed with; and that in this part of the case the inquiry for the jury was, whether the plaintiff had conducted fairly, obtaining the best prices which by the use of due and reasonable diligence could be obtained, and accounting honestly and truly according to the best information and means within his reach and control.

And that if his omission to produce particular and exact accounts of his transactions in relation to said lumber had been explained and accounted for to the satisfaction of the jury, and involved no gross carelessness or dishonesty on his part, then he was entitled to a reasonable relaxation of the general rule, and ought not to be deprived of just compensation for his services and expenses, on account of such omission; and then the jury ought to allow him as against the proceeds of said lumber, all his expenses necessarily incurred and paid in the management and disposal thereof, together with a reasonable compensation for his storage and services, the amount to be determined by the usages of the trade and

the rates of compensation generally allowed at San Francisco in such cases.

That for storage of the lumber in the plaintiff's warehouse or vessel after the expiration of the time limited in the bill of lading for its delivery to and reception by the consignee, the plaintiff was entitled to a reasonable compensation ; but that if at San Francisco the charge of commissions, or any other charge contained in the plaintiff's account, was understood to embrace and cover compensation for storage, then the charge for storage in addition to such commissions or other charges ought not to be allowed; as the plaintiff was entitled in the whole only to a reasonable compensation for his expenses and for the use of his vessel, and for his services in the transaction of the business.

And that if the jury should find that the lumber had been transported by the plaintiff according to the terms of the contract contained in the bill of lading, and that the proceeds of the lumber actually received, or which by the exercise of due and reasonable diligence might have been obtained, after deducting therefrom the necessary expenses paid by the plaintiff and a reasonable compensation for his storage and services, amounted to less than the freight and primage earned by the transportation of the lumber, then their verdict ought to be for the plaintiff to recover the difference, with interest thereon, from the 17th of August, 1850, to the present time ; but if such proceeds actually received, or which by the use of due and reasonable diligence might have been obtained, after deducting such expenses and compensation, amounted to more than the freight and primage, then their verdict ought to be for the defendant.

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial for error in the rulings and charge of the court.

*Hawley* and *Minor*, in support of the motion.

1. The evidence regarding the measurement was variant from the declaration.

2. The testimony offered to show that the guarantee was given in lieu of a lien, should have been admitted.

3. Defendant was entitled to notice of the measurement, the proceeds of sales, the amount of expenses, &c., before action brought. Without such notice it was impossible for him to know how much he was bound to pay, if indeed anything. 1 Chitt. Pl., 320. Chitt. on Cont., 732. 2 Pars. on Cont., 180.

4. The charge as to plaintiff's having kept no account was erroneous. Paley on Agency, 27, 28.

*Dutton* and *Ferris*, contra.

1. The evidence regarding the measurement was properly admitted. 1. It was not materially variant from the declaration, in the first count thereof. 2. It was clearly admissible under the second and third counts. 3. There was no need of alleging, at all, the performance of the stipulation regarding the measurement. *Lounsbury* v. *The Protection Ins. Co.*, 8 Conn. R., 466. 4. This point was settled by the opinion of the court on the former trial of this case. 23 Conn. R., 157.

2. The evidence offered to prove the intention of the parties, in reference to the guarantee indorsed on the bill of lading, was properly rejected. It was a mere attempt to vary a written contract by parol evidence.

3. No demand before suit was necessary. 1 Chitt. Pl., 320, 321.

The freight, by the terms of the bill of lading, was payable on the arrival of the lumber at San Francisco. *Williams* v. *Granger*, 4 Day's R., 444. *Breed* v. *Hillhouse*, 7 Conn. R., 523, 533.

4. The charge of the court regarding the allowance to the plaintiff for services and expenses, was correct. 1. The plaintiff was made agent in this case against his wish, and by the default of the defendant, and ought not to be held to any course of conduct which would be unreasonable under the circumstances. 2. If there is any rule which, under peculiar circumstances, will deprive an agent of his right

to remuneration, that rule is subject to the qualifications stated by the court.   The law will not punish a man, whose motives are good, for a mere mistake.   3. The charge of the court put upon the plaintiff the necessity of doing everything which the policy of the rule requires, before his charges could be allowed.   4. By the terms of the contract itself, the plaintiff was permitted to indemnify himself from the proceeds of the lumber for the expenses of the sale. Where there is such a special contract, it supersedes any rule which the law would otherwise furnish.

HINMAN, J.   When this case was before us at a former term, (23 Conn. R., 157,) we held that the stipulation regarding the measurement of the lumber on the deck of the vessel, which was written across the face of the bill of lading, was not, under the circumstances, a condition precedent to the plaintiff's right of recovery.

It appeared to us rather as a stipulation for the benefit of the plaintiff, to enable him to retain possession of the lumber on the deck of his vessel, until his freight was paid ; and to prevent the consignee from obtaining possession, under any pretense, until he first paid the freight.   If this is so, then it was obviously competent for the plaintiff to waive it, and he did waive it by measuring a part of the lumber on the wharf.

But however this may be, it is quite clear that the place of measurement can be of no other importance than to enable the plaintiff to retain possession of it, or as the mere appointment of a suitable place where the plaintiff and the consignee could meet, and see to its correct measurement; and in either case, we thought it not intended to be incorporated in the contract, as a condition which must necessarily be performed, to entitle the plaintiff to demand his freight. If it was the mere appointment of a suitable place for the parties to meet, and measure the lumber, it may be considered in the light of a note, or memorandum, collateral to the contract, rather than any part of the contract itself; and as the object of it was entirely frustrated by the death of the

consignee, and the refusal of Lockwood, or any other agent of the defendant, to receive the lumber, or to act on his behalf in respect to it, we thought it a stipulation which had ceased to be of any importance, and its non-performance would not therefore prevent the plaintiff from recovering in this suit. Without dwelling further on this point, it is sufficient to say that we see no occasion now to change our former opinion upon it. If it be said that the construction given to this stipulation varies the contract from that set out in the first count, the obvious answer is that this objection does not apply to the second and third counts, which are both applicable to the plaintiff's case, and either of which, by our practice, is sufficient to sustain the verdict.

The rejection by the court, of parol evidence to show that the guarantee on the back of the bill of lading was given to secure the payment of freight, and to prevent a sale for this object, was proper. The direct effect of the evidence was to vary the contract, as it appeared by the bill of lading, which made the payment a condition upon which the lumber was to be delivered. This is clearly implied from the terms used in the body of the bill of lading, and is clearly and fully expressed on the margin, where it is said, " Freight payable in specie or its equivalent, before delivery." Of course this could not be varied by parol, without a departure from the well settled principle that parol evidence is inadmissible for the purpose of altering the legal operation of a written instrument.

It is claimed that, before the action could be commenced, the plaintiff was bound to give the defendant notice of the measurement of the lumber, of the sales of it, and of the expenses of selling it. But it appears to us that the parties had equal means of information, in respect to the measurement; and it was therefore the fault of the defendant that he did not know of it. It was contemplated that the parties should meet on the deck of the vessel, on its arrival at San Francisco, and jointly attend to the measurement; and if the defendant's agent, Lockwood, had attended to his duty, this would have been done. This neglect ought not to

impose any additional burden, in respect to giving notice, upon the plaintiff. The appointment of a time and place when and where the parties would meet, and attend to an act of this sort, certainly appears to give the parties the means of knowledge, to as full extent as they would have of an award of arbitrators, or the act of a stranger of which a party is bound by promise to take notice, because he has the means of knowledge; and we think the fact in respect to the measurement falls within this principle. 2 Saund. R., 62, n. 4.

As to notice of the proceeds of sales, after deducting expenses, that is no part of the plaintiff's case. It comes in by way of reducing the amount which he would otherwise be entitled to recover for freight. His action is for freight earned in transporting for the defendant a cargo of lumber to San Francisco, and the defendant comes in and says he ought not to pay this amount, because the plaintiff obtained payment by a sale of the lumber after the freight was earned; and the question is, how much shall be deducted from the plaintiff's claim on this account. It is rather for the defendant, than for the plaintiff, to show the amount of sales. It is true, in doing so, he resorts to the plaintiff's account of these sales, but what they have to do with his right to commence his suit for freight, we do not see. And as the proceeds of the sales, and the sales themselves, stand upon the same footing, no notice of either was required.

It is claimed that the charge of the court was wrong, in respect to the plaintiff's not having kept an account. There is no doubt but that ordinarily it is the duty of agents to keep regular accounts. The court gave the defendant the benefit of this principle, and then stated to the jury the modifications of it which seemed applicable to the circumstances of the case. In cases of gross neglect of this sort, as well as in cases of gross misconduct in other respects, an agent may so conduct his business as to forfeit his whole title to compensation, and thus be made to bear the consequences of his misconduct. Story on Agency, 422, § 332, 333. He is also, in accounting, liable to have all doubtful

circumstances construed unfavorably to his rights and inter-
ests.    Now the court threw upon the plaintiff the burden of
explaining his neglect to keep accounts, and made his right
to a reasonable compensation, in the course of his agency,
to rest on his ability to give a satisfactory explanation,
which implied no imputation of gross carelessness, dishon-
esty or fraud.    We think this was correct under the circum-
stances.    Indeed, we do not see what other course could
have been taken.

It is said that the charge was too vague, taken as a whole;
but as we are referred to no specifications under this claim,
and do not perceive any ground for the claim in the charge
itself, we do not advise a new trial on this account, or on
any of the points which we have had occasion to notice.

In this opinion the other judges, WAITE and STORRS,
concurred.

New trial not advised.