WALTER H. LEWIS AND OTHERS *vs.* THE HARTFORD SILK MANUFACTURING COMPANY AND OTHERS.

Hartford Dist., Oct. T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A manufacturing corporation made a mortgage of its factory and other property to the plaintiffs, commission merchants, the condition reciting

Lewis *v.* Hartford Silk Manf. Co.

a bond in which it was stated that the mortgagor was a manufacturer of silk and cotton goods, and was about to commence the manufacture of ginghams, and that to enable it to do so loans would be needed which the plaintiffs were willing to make from time to time within twenty-four months, providing the whole outstanding at any one time should not exceed $100,000; the condition then providing that if the company should manufacture and deliver to the plaintiffs for sale on commission enough of such ginghams to equal the aggregate of the accommodation so given and save the plaintiffs harmless, the deed should be void. After the plaintiffs had accepted the drafts to the amount of $100,000, which were still outstanding, the company, through its business manager, requested them to accept other drafts, beyond that amount, to which they agreed under the promise that they should be secured therefor by the mortgage, the ginghams which had been and should thereafter be consigned to them, and by certain coal stock; and the plaintiffs thereafter, from time to time, accepted further drafts, amounting to $51,000, which had not been paid when the company went into insolvency. Held, in a suit brought by the plaintiffs to foreclose the mortgage—

1. That the plaintiffs had the right to apply the ginghams received on commission to the payment of the $51,000, and were not bound to apply them on the $100,000 of advances secured by the mortgage.

2. That the mortgage secured all advances made at the request of the company up to $100,000, without reference to whether they were necessary to enable the company to commence the manufacture of ginghams.

The recital in a mortgage of the purpose for which the mortgagor desires the money and to which he proposes to devote it, is of no legal significance as between the mortgagee and other creditors.

The business and financial manager of the company requested the plaintiffs to make the additional advances mentioned and agreed that they should be secured by the mortgage which they then held, by the ginghams previously and subsequently consigned to them and by the coal stock. No vote of the directors was passed on the subject. Held that the company was bound by his acts.

And held that, though he could not mortgage the real estate without a vote of the directors, he could pledge the personal property, although already pledged by the mortgage for another purpose to the same parties.

The plaintiffs, when they began to make the additional advances, opened a new account with the company, in which they charged the advances and credited the proceeds of the ginghams theretofore and thereafter received, and sent a copy of this account to the company, which was received without objection and corresponding entries made on its own books. Held that the result was an actual application by the plaintiffs of the proceeds of the ginghams to their later advances, with the knowledge and consent of the company.

[Argued November 7th—decided December 23d, 1887.]

SUIT for the foreclosure of a mortgage; brought to the
Superior Court in Hartford County. The plaintiffs were
the surviving partners of the firm of Lewis Brothers & Com-
pany and the executors of a deceased partner; the defend-
ants were the Hartford Silk Manufacturing Company, a
joint stock corporation, Edward A. Freeman, trustee of the
corporation in insolvency, George M. Bartholomew and
Thomas F. Plunkett, and Charles M. Joslyn, trustee in
insolvency of the estate of said Bartholomew. The case
was heard before *Phelps, J.*, the facts found, and judgment
rendered for the defendants. The plaintiffs appealed. The
case is fully stated in the opinion.

*C. E. Perkins*, for the plaintiffs.

*H. C. Robinson* and *C. M. Joslyn*, for Joslyn, trustee.

*T. M. Maltbie*, for the Hartford Silk Manufacturing Com-
pany, and Freeman, trustee.

PARDEE, J. This is a suit for the foreclosure of a mort-
gage. The foreclosure was denied by the court, and the
plaintiffs have appealed. Edward A. Freeman, who is a
trustee of the Hartford Silk Manufacturing Company in
insolvency, also appeals, as does also Charles M. Joslyn,
trustee in insolvency of the estate of George M. Bartholo-
mew, both trustees having been made defendants.

On October 22d, 1884, the Hartford Silk Manufacturing
Company executed and delivered its bond to the plaintiffs
for the payment of $100,000; also by way of security there-
for a mortgage of real estate situated in Tariffville, in the
town of Simsbury. The condition in the bond and mort-
gage is as follows:

" The condition of this obligation is such that whereas
the said Hartford Silk Manufacturing Company is the
manufacturer of certain silk and cotton goods at Tariffville,
Connecticut, and has heretofore sent, and expects hereafter to
send, its manufactured goods to said Lewis Brothers & Co.,

commission merchants in said city of New York, for sale, the said Lewis Brothers & Co. making advances from time to time on the manufactured goods received by them; and whereas the said company is about to commence the manufacture of ginghams, and it is understood between the parties hereto that said company will need certain accommodations from time to time, for a longer or shorter period, in order to enable it to prepare for and to commence the manufacture of said ginghams, and before it will be possible to obtain sufficient advances on the ginghams so manufactured; and said Lewis Brothers & Co. are willing and have agreed to give such accommodation to said company from time to time within a period of twenty-four months from the date hereof, by accepting its drafts drawn upon them, provided that no one of said drafts shall be for a larger sum than five thousand dollars, and the aggregate thereof shall never exceed the sum of one hundred thousand dollars outstanding at any one time, not including however in said aggregate any advances made by them to said company on any other line of goods in the possession of said Lewis Brothers & Co.: Now if said Hartford Silk Manufacturing Company shall manufacture and deliver into the hands and possession of said Lewis Brothers & Co., for sale by them on commission, sufficient of said ginghams, the value whereof shall be equal to the aggregate of said accommodation so given by said Lewis Brothers & Co. to said company for the purpose aforesaid, and, in default thereof, shall save the said Lewis Brothers & Co. harmless from the payment of all and every of said drafts so drawn upon them by said company and accepted by them for the purpose aforesaid, and each and every renewal or partial renewal thereof, then this obligation is to be void, otherwise in full force and effect."

The bond and mortgage were duly executed and delivered, in pursuance of a vote of the directors of the Hartford Silk Manufacturing Company, and recorded.

Between October 22d, 1884, and June 30th, 1885, the company drew its drafts on the plaintiffs for $106,000, which

were accepted by the plaintiffs and renewed from time to time till the insolvency of the company, and were subsequently paid by the plaintiffs. The amount was intended to be only $100,000, but by mistake was made $106,000. The company was declared insolvent in September, 1886, and Edward A. Freeman was appointed trustee of its estate.

For some time previous to the execution of the bond and mortgage the plaintiffs had been engaged in selling silk and tapestry goods on commission for the company, and making advances and accepting drafts on account of the goods, and had an open acccount of the same with the company, which was continued as a separate account until its insolvency. Another and distinct account was opened with the plaintiffs for the drafts accepted under the bond and mortgage, designated "Lewis Brothers & Co., Account No. 2," in which all the drafts were credited to the plaintiffs.

Soon after the execution of the bond and mortgage the company commenced to manufacture ginghams, and on January 13th, 1885, began to forward them to the plaintiffs, and continued to send them from time to time until its insolvency. The net cash value of these goods received by the plaintiffs, prior to July 9th, 1885, was $12,000, and the value of all received by them was $80,907.08. The company kept a separate account of them under the designation of "Lewis Brothers & Co., Merchandise Account No. 2."

At the time the company commenced to forward these goods to the plaintiffs they had accepted drafts on them amounting to $61,000.

On December 4th, 1884, George M. Bartholomew, a stockholder and director in the company, executed and delivered the agreement mentioned in the answer and cross-complaint of Charles M. Joslyn, trustee of the insolvent estate of Bartholomew. The stock mentioned in the agreement, had previously been delivered by Bartholomew to the plaintiffs.

On or about July 9th, 1885, Thomas F. Plunkett, the president and principal business and financial manager of the company, requested the plaintiffs to accept other drafts,

and thereby make other and additional advances to the company than those contemplated and secured by the mortgage, to which the plaintiffs agreed, under a verbal promise by Plunkett that they should be secured therefor by the mortgage, and the ginghams which had been and thereafter should be consigned to them, and also by the Flat Top Coal Company's stock mentioned in the Bartholomew agreement. Bartholomew was present with Plunkett on some of the later occasions when additional advances were applied for. The arrangement for those additional advances was not authorized or ratified by the company by a vote of its stockholders or directors.

The Flat Top Coal Company's stock was of the par value of $100 per share, and was sold by the plaintiffs, October 11th, 1886, after the default of the company to fulfill the condition of the mortgages, for $36,618.75, which was a fair sale and a fair price for the stock. The sale of the stock was made by the plaintiffs without notice to Bartholomew or the company.

In pursuance of the arrangement with Plunkett, the plaintiffs from time to time, prior to September, 1886, made additional acceptances and advances, amounting in all to $51,000, which have never been paid. The company received the full benefit of them, and the plaintiffs would not have made them but for the arrangement mentioned and their belief that they would be protected by the company.

In September, 1886, Bartholomew was duly declared insolvent, and the defendant Joslyn was appointed trustee of his estate.

On October 25th, 1884, the company executed and delivered to Plunkett and Bartholomew a mortgage of the same premises described in the mortgage to the plaintiffs, which was not recorded until within less than sixty days of the insolvency of the company. This mortgage was given to secure the indorsements made by Plunkett and Bartholomew of the notes of the company. During all the time the mortgage was withheld from record the company was contracting indebtedness in the purchase of materials for the

conduct of its business, and in procuring the discount of notes, much of which indebtedness was unpaid at the time the company went into insolvency.

After July 9th, 1885, the plaintiffs entered in a separate account, designated " Merchandise Account No. 2," their additional acceptances as a debt of the company, and also entered in the credit side of the account the avails of all the ginghams theretofore and thereafter received and sold by them, those theretofore received and sold not having been previously credited to the company in any other account kept by the plaintiffs. On January 1st, 1886, the plaintiffs sent the company a copy of the account to that date made as above mentioned, which the company received without objection and entered in its own books, and the account was thereafter continued to be kept in the same manner by both the plaintiffs and the company until the insolvency of the company.

The bond to the plaintiffs was fully paid by the avails of the ginghams sold, and by enough of the avails of the Flat Top Coal Company's stock to cover the deficiency, and the mortgage was thereby fully satisfied; and at the commencement of the suit nothing was due the plaintiffs on the bond.

At the time of the failure of the company Bartholomew was indebted to it $7,846.98, which should be deducted from the avails of the Flat Top Coal Company's stock remaining after the payment of the bond, and the balance of the avails should be paid by the plaintiffs to Joslyn as trustee of Bartholomew.

The plaintiffs have a valid claim on the mortgaged premises for the additional acceptances and advances, and should release the same to Freeman as trustee, subject to such claim.

The mortgage from the company to Bartholomew and Plunkett is invalid against the trustee and creditors of the company, and a cloud upon the title to the premises.

The judgment of the court is as follows :

" This action by complaint claiming foreclosure of a mort-

gage to the plaintiffs from the Hartford Silk Manufacturing Company, of certain real estate, machinery, etc.; situated in Simsbury in said county, and made to secure a bond for $100,000, and also claiming possession of the mortgaged premises and property, duly came to this session of said court, when the plaintiffs appeared, and the defendants, E. A. Freeman, trustee of the insolvent estate of said company, and C. M. Joslyn, trustee of the insolvent estate of George M. Bartholomew, also appeared, and Thomas F. Plunkett did not appear. Said Freeman, trustee, and said Joslyn, trustee, severally filed answers and cross-complaints.

" Said Freeman by his answer and cross-complaint claims that any sums due to the plaintiffs upon said bond and mortgage had been fully paid by the delivery to them of ginghams valued at $80,907.08, and by the amount realized and received by the plaintiffs from the sale of certain stocks pledged to the plaintiffs by said Bartholomew as additional security for liabilities arising under said bond and mortgage. Also that if under the agreement by which said stock was pledged as such additional security said Joslyn, trustee, was entitled to have said bond and mortgage assigned to him as security for the amount paid on account of the same from the sale of said stock, then the said Freeman was entitled to set off and deduct therefrom an indebtedness of $7,846.98, with interest, existing from said Bartholomew to said Hartford Silk Manufacturing Company. Also claiming that a certain mortgage of said property to secure a bond of $200,000, made by said company to Thomas F. Plunkett and George M. Bartholomew, on October 25th, 1884, and not recorded until September, 1886, and within sixty days of the assignment in insolvency of said company, was invalid and void, and was a cloud upon the title of said Freeman as trustee which should be removed.

" Said Joslyn by his answer and cross-complaint claims that all claims of the plaintiffs under said bond and mortgage to them have been paid ; that five hundred and twenty five shares of the stock of the Flat Top Coal Company was pledged to the plaintiffs by said Bartholomew as additional

security for the sums becoming due under said bond and mortgage; that the plaintiffs received from the Hartford Silk Manufacturing Company, on the said bond and mortgage, $80,907.08, and then sold said stock for $36,618.75, and applied $     of the amount upon said bond and mortgage; that said bond and mortgage should be assigned to and vested in said Joslyn, trustee, as security for said last sum, and that judgment should be rendered against the plaintiffs for the proceeds of said sale not applied on said bond and mortgage, the sum of    , or that the plaintiffs should be ordered to return said stock to said Joslyn, trustee.

" The court finds that there is nothing due the plaintiffs upon said bond and mortgage; that the allegations of the answer and cross-complaint of the defendant Freeman are true, and the allegations of the answer and cross-complaint of the defendant Joslyn (except the allegation that he is entitled to the return of the stock of the Flat Top Coal Company) are true.

" Whereupon it is adjudged that the plaintiffs' complaint be dismissed; and said mortgage to Thomas F. Plunkett and George M. Bartholomew is invalid and a cloud upon the title to the premises and property therein described, and as such is removed, set aside, and discharged; that the interest of the plaintiffs in said mortgaged premises and property be assigned and conveyed by them to, and vested in, said Joslyn, trustee, subject to the claim of the plaintiffs thereto as security for $6,000 and interest, advanced by mistake, beyond the $100,000 intended to have been advanced, and for $51,000 and interest, for additional acceptances and advances made by the plaintiffs to said Hartford Silk Manufacturing Company after July 9th, 1885, under a verbal arrangement, outside of and subsequent to the plaintiffs' mortgage, between them and said Thomas F. Plunkett; and said Joslyn, trustee, is empowered and directed to release the interest in said premises and property so conveyed to him by the plaintiffs, to said Freeman, trustee, on the receipt from him of $9,678.85 and the interest thereon, said sum

being a portion of the avails of the Flat Top Coal Company stock belonging to said Bartholomew, and sold by the plaintiffs and applied toward the payment of said bond, after deducting $7,846.98 for the indebtedness of said Bartholomew to said company ; and that said Joslyn, trustee, recover said sum of $9,678.85 and interest from the plaintiffs, and his costs, taxed and allowed at $       ; and that said Freeman, trustee, recover from the plaintiffs his costs, taxed and allowed to be $       ."

The plaintiffs appeal from this judgment for the following reasons :—

1. The court should have held that the plaintiffs had the right to apply the avails of ginghams sold by them upon the additional advances made by them, as stated in the finding.

2. The court erred in ordering that the plaintiffs' complaint be dismissed.

3. The court erred in ordering that the plaintiffs convey their interest in said mortgaged premises and property to said Joslyn, trustee.

4. The court erred in directing that said Joslyn recover of the plaintiffs the sum of $9,678.85.

5. The court should have found, as matter of law upon the finding, that the agreement of said Plunkett with the plaintiffs was binding upon said company, and that the appropriation of the avails of said ginghams to pay said additional advances acquiesced in by said company, and entered upon the company's books, was valid, and that the mortgage should have been held valid for the amount of said acceptances not paid by the avails of said ginghams above said amounts so applied on said additional advances.

The defendant Joslyn, trustee, appeals for reasons as follows :—

1. The court should have held that the amount secured by said mortgage to the plaintiffs was the amount needed by the said Hartford Silk Manufacturing Company "in order to enable it to prepare for and to commence the manufacture of ginghams."

2. The court should have held that the amount secured by said mortgage was no greater sum than $61,000, that being the amount of said advances when said company began to ship ginghams to the plaintiffs.

3. The court should have held that the undersigned was entitled to a judgment against the plaintiffs for the full amount realized by the sale of said Flat Top Coal Co. stock.

4. The court erred in not holding that the undersigned was entitled to an assignment of the plaintiffs' mortgage to at least the extent of $19,092.92, that being the difference between $100,000 and the amount of said ginghams, or that the undersigned was entitled to the benefit of said mortgage to that amount.

5. The court erred in not holding that the undersigned was entitled to a foreclosure, either as assignee or equitable owner, against said silk company, for the amount of $19,092.92, less the indebtedness, if any, from said Bartholomew to said company.

6. The court erred in not holding that the undersigned was entitled to a judgment against the plaintiffs for $17,525.83, that being the difference between the proceeds of said Flat Top Coal Co. stock and said $19,092.92.

7. The court erred in holding that the mortgage to said Bartholomew and Plunkett was invalid, and a cloud upon the title to said premises and property, and should be removed.

8. The court erred in holding that the interest of the plaintiffs in said mortgaged premises and property be assigned to the undersigned, subject to the claim of the plaintiffs thereto, as security for $6,000 and interest advanced by mistake, and for $51,000 advanced under a verbal agreement between them and said Plunkett.

We will consider two of the questions arising upon the record:—1. Does the mortgage protect advancements by the mortgagees to the extent of $100,000, or only such as were necessary to enable the mortgagor to commence the manufacture of ginghams? 2. Could the plaintiffs by virtue of the agreement made by Plunkett and Bartholomew in

behalf of the Silk Manufacturing Company, repay themselves for advancements to the extent of $57,000 from the proceeds of ginghams manufactured and consigned to them by the company, before making any application of such proceeds upon the mortgage debt of $100,000?

The expressed purpose of the mortgage is to secure the mortgagees for future advancements. Neither party could foresee the precise limit to the mortgagor's necessities. It had the right to determine the amount for which it would pledge its estate; up to that the mortgagees had the right to rely upon the pledge as security for loans, as against the mortgagor and all others. The inquiring public is not concerned with any statement in this instrument except the insertion in it of $100,000; in that there is the precision and certainty necessary to its protection. In the presence of an explicit statement of the sum which the mortgagor would borrow if the mortgagees would lend, the recital as to the purpose to which the former proposed to apply the money is of no legal significance. Having the money in its possession the mortgagor could apply it at its pleasure; the mortgagees would be powerless to compel use or prevent misuse, and are not to be affected by any act of omission or commission. They fulfilled their legal obligation to the public in placing upon record the utmost limit of their lien; thereafter there remained to no person the right to assume that it was less. If a mortgagor has reason to apprehend that the giving of a mortgage will injuriously affect his financial standing, he has the right to reduce that danger to the lowest possible degree by inserting in the mortgage a declaration that he is not compelled to borrow because of losses, but because he wishes to make improvements from which he expects large returns. No intending creditor has any legal excuse for finding any other meaning than this in the recital. The agreement that the mortgagor would deliver and the mortgagees receive ginghams in payment for advancements is not placed beyond the power of the parties to change or annul by parol, by themselves or by their agents, because it is recited in an instrument which needed

a corporate vote for its validity. It is not variant in character or effect from an agreement by the mortgagor to pay money when and as fast as it should receive it; or from any agreement as to time and mode of delivery and reception of any kind of personal property in discharge of the obligation. The effect of it is limited to the immediate parties. No other person has any interest in or right to enforce it, or right to assume that it has been or will be carried into effect by the parties making it. There still remains to the mortgagee the right to change the time and mode of payment and to allow the mortgagor to pay other creditors. He may make other advancements and receive money, ginghams or any other property in payment, without endangering his right to a foreclosure for his entire debt.

On or about July 9th, 1885, T. F. Plunkett, the president and principal business and financial manager of the Silk Manufacturing Company, requested the plaintiffs to make advancements to the company in addition to those contemplated and secured by mortgage, and verbally agreed that these should be secured by the mortgage, by the ginghams previously and subsequently consigned to them, and by the Flat Top Coal Company's stock pledged by Bartholomew. Requests for additional advancements were renewed from time to time by Plunkett, and on some of the later occasions Bartholomew was present. Upon such requests and agreement the plaintiffs, between July 9th, 1885, and September, 1886, advanced the sum of $51,000 to the company. There was no vote either of its stockholders or directors authorizing such borrowing or agreement. No such vote was necessary to make the acts of Plunkett binding upon the corporation. Having made him its principal and general financial manager and agent, with no limitation upon his power, and having notified all persons concerned of such appointment, the company is bound by his act of borrowing for its benefit and of pledging ginghams or any other personal property for re-payment. He was clothed with power to borrow money for its necessary and proper uses from any person who would lend; to sell ginghams and repay; or consign

ginghams with leave to retain the proceeds; or use any other property for that purpose. And as in these matters in legal contemplation he was the corporation, he could bind it as effectually as it could bind itself by corporate vote when taking up money, by an agreement that payment should be secured by the previous mortgage, provided (in the interest of other creditors) the aggregate should not exceed the extreme limit of $100,000. Of course a corporate vote was necessary to a valid mortgage by its financial agent of the real estate of the Silk Manufacturing Company to the plaintiffs. But all money or other personal property or rights therein coming into its possession because of the mortgage security thus given, were at the disposal of its general, unlimited financial agent, equally with any other personal property belonging to it. A corporate vote is not made necessary to the valid disposition of this right in personal property because of the mention of it in a sealed instrument. Therefore if we should concede that, as against the plaintiffs, the agreement between them and the Silk Manufacturing Company constituted a valuable right in the possession of the latter, nevertheless Plunkett had absolute power of disposal of this right for its benefit. He could exchange, sell, pledge or annul it by his individual action, at his discretion. Presumably the agreement by the mortgagor to deliver and by the mortgagee to receive ginghams in payment was for the benefit of the latter, and although it has a place in the condition of the mortgage, they were under no obligation to see in it any limitation upon the power of the mortgagor's general financial agent thereafter to borrow, if they should be willing to lend, other and additional sums for its benefit, and make payment therefor in money, ginghams, or any other personal property. The purpose of the mortgagor was to give satisfactory security for the loan of $100,000; not at all to bar itself from borrowing other money if a willing lender could be found.

As it is the company's duty always to pay its debts, the application of any of its personal property or rights in stock at any time to that use by its accredited financial

agent without limitation, is binding upon it. And whatever valuable property right, as against Bartholomew, the Silk Manufacturing Company had in the use and application of his shares in the Flat Top Coal Company, that right was at the disposal of Plunkett for the benefit of the company by sale or pledge; Bartholomew's rights of course not to be affected by any act of Plunkett not authorized or ratified by himself.

Moreover, upon the record there was such corporate ratification of Plunkett's act as would have established them in the absence of previous authority. On June 30th, 1885, the plaintiffs had advanced to the Silk Manufacturing Company the full sum of $100,000, for security of which the mortgage was given, and by mistake $6,000 in excess. On January 1st, 1886, they gave the company written notice that they had advanced additional sums to it and had applied towards the payment therefor the proceeds of the ginghams which it had consigned to them and which were referred to in the condition of the mortgage. The company received this notice and made on its own books a like credit upon a like account. Silence then imposes silence now upon it in reference to this transaction. The result is an actual application of the proceeds of the ginghams by the plaintiffs to the repayment of the last advances with the knowledge and assent of the Silk Manufacturing Company.

Therefore, upon the plaintiffs' appeal there is error in the judgment of the Superior Court in dismissing the petition; in denying the plaintiffs the right to repay themselves from the proceeds of ginghams consigned by the Silk Manufacturing Company and sold by them, first of all, the sum of $57,000 advanced by them to the company with interest; in determining that there is nothing due them upon the bond and mortgage executed by the company in their favor under date of October 22d, 1884; in denying them the right, secondly, to receive from the company as a debt secured by the mortgage the balance of their advancements to it with interest, less the proceeds of ginghams consigned by the company and sold by them, with interest; also less the pro-

ceeds of the shares of the Flat Top Coal Company pledged by Bartholomew, and sold by them, with interest; in requiring them to assign and convey to Joslyn, trustee, their right and title to and interest in the mortgaged premises and property before repayment to them of the advancements above mentioned with interest; in ordering them to pay Joslyn, trustee, the sum of $9,678.35; and in not granting the plaintiffs' petition for foreclosure.

If after the adjustment of the plaintiffs' claims upon the foregoing principles there remains unsettled any question of practical importance between the trustee of G. M. Bartholomew and the trustee of the estate of the Silk Manufacturing Company, it will be determined.

In this opinion the other judges concurred.