Louis M. Sagal *vs.* Charles Mann.

Third Judicial District, New Haven, June Term, 1915.
Thayer, Roraback, Wheeler, Beach and Bennett, Js.

The better settled rule is that a change in the terms of a contract which will discharge a guarantor, must be an alteration of a material and substantial character.

In the present case a written lease stipulated that the premises were to be used as a livery stable and not for the storage and keeping of automobiles; and empowered the lessee to assign or sublet with the written consent of the lessor. Such consent was subsequently given,

but with a provision that the original lessee was nevertheless to remain liable for the payment of the rent. It also contained one or two unimportant stipulations which were not in the original instrument. The sublease made no mention of the restriction relating to automobiles. In an action to recover rent, against one who had guaranteed its payment, it was *held* that his obligation was not altered or impaired in any manner by the permission given the original lessee to sublet the premises.

Rent is an incident to the reversion, and a guaranty to pay rent, which is indorsed upon and forms part of the lease, runs with the instrument, and is enforcible in his own name by a purchaser of the reversion. This right is founded, not upon privity of contract, but upon privity of estate.

A creditor who accepts a payment must apply it as the debtor directs; but in the absence of any direction, the creditor may apply it to either one of two or more debts as he pleases, and to an unsecured rather than to a secured debt, at his option.

The cases of *Rowan* v. *Sharps Rifle Mfg. Co.*, 33 Conn. 1, *Chester* v. *Leonard*, 68 Conn. 495, and *State* v. *Spittler*, 79 Conn. 470, explained and distinguished.

Argued June 3d—decided July 16th, 1915.

ACTION to recover rent guaranteed by the defendant, brought to the City Court of New Haven and tried to the jury before *Booth, J.;* verdict and judgment for the plaintiff for $335, and appeal by the defendant. *No error.*

From the undisputed, material facts, it appears that on October 8th, 1910, one Rose A. Ward leased to Jacob Mann certain premises known "as a stable" in the city of New Haven. The lease contained the provision that the premises might be sublet by the written permission of the owner. On the 10th day of October, 1910, the defendant, Charles Mann, in writing, guaranteed the payment of the rent to be paid under the lease, which was indorsed on and made a part of the lease. This guaranty contained these provisions: "For and in consideration of the letting of the premises above described, and for value received, I guarantee the punctual payment of the rent and

performance of the covenants in the above agreement mentioned to be paid and performed by said lessee, without requiring any notice of non-payment or non-performance, or proof of notice or demand being made, whereby to charge me therefor." Jacob Mann then entered into possession of the premises.

On May 6th, 1912, Rose A. Ward, in pursuance of the provisions of her lease to Jacob Mann, in writing consented that he might sublet the premises. This consent was, however, given upon the express condition that Rose A. Ward, the original lessor, would not release Jacob Mann from his promise to pay the rent under the provisions of the lease of October 8th, 1910. The original lease contained the provision that the premises were "to be used as a livery stable, and not to be used for the storage and keeping of automobiles." This written consent to sublet did not contain this restriction. Aside from this, there was no noticeable departure from the terms of the original lease in the permission to sublet. This permission to sublet was without the express consent or approval of the defendant. Jacob Mann shortly thereafter sublet the premises to one William J. Maher. Maher failed in the payment of rent and was dispossessed by Jacob Mann. Afterward, on the 16th day of April, 1913, Jacob Mann procured an assignment to himself of the rights and interest of William J. Maher in and to these premises, and became the tenant of the plaintiff, who had purchased the leased premises from the original lessor, and paid rent to him for several months under the terms and stipulations of the original lease. Rent accrued and became due to the plaintiff from Jacob Mann in the sum of $58 for the month of September, 1913, $67 for the month of November, 1913, and $125 for the month of December, 1913; all of which remained unpaid when this action was commenced.

It appears that during the occupancy of these premises by Jacob Mann and Maher they were used for the storage of automobiles.

The evidence shows that the plaintiff had two distinct claims for rent against the debtor, Jacob Mann, the present one, which was guaranteed, and another, which was not guaranteed. Jacob Mann made payments from time to time to the plaintiff, without any direction or suggestion as to the application which he wanted to make of these payments. The plaintiff applied them as they were made to the claim which was not guaranteed.

*Charles S. Hamilton*, for the appellant (defendant).

*Benjamin Slade*, for the appellee (plaintiff).

RORABACK, J.   The defendant claims that by the permission to sublet there was a radical and fundamental alteration of the contract between the original lessor and lessee, which discharged the defendant as guarantor from the payment of the rent. Some courts hold that, although departures from the principal contract, or changes in its terms, are not of a material nature, the guarantor will be released; but the weight of authority requires that such changes should be of a material and substantial character to discharge him. 20 Cyc. 1444, 1445.

In the present case there was a provision in the original lease that the lessee might assign or underlet with the written consent of the lessor. The defendant was bound to know of this when he executed the guaranty. The written permission or consent to sublet contained a provision to the effect that Jacob Mann was to remain liable for the payment of the rent notwithstanding the subletting. It is true that the sub-

lease did not mention the restriction relating to automobiles. The written consent also set forth one or two unimportant stipulations which were not set forth in the original instrument; but the responsibility of the guarantor was not in any way extended or enlarged by the agreement to underlet; it remained in the precise terms it was before the subletting occurred. The obligation to pay the rent for which this action was brought was not in letter or spirit changed by this transaction, nor can it be claimed that any right of the defendant was altered or impaired by the permission to sublet which was made with Jacob Mann. *Benjamin* v. *Hillard,* 64 U. S. (23 How.) 149, 165, 16 L. Ed. 518, 521; *Jones* v. *Hoyt,* 25 Conn. 374; *Lowry* v. *Adams,* 22 Vt. 160; *Bothfeld* v. *Gordon,* 190 Mass. 567, 572, 573, 77 N. E. 639; 8 Modern American Law, p. 80. The court below, in sustaining the claim of the plaintiff, simply held the defendant to the responsibility which was plainly expressed in his guaranty, and which was not in any manner affected by the transaction relating to the subletting of the premises.

To sustain his contention upon this branch of the case, the defendant relies upon the cases of *Rowan* v. *Sharps Rifle Mfg. Co.,* 33 Conn. 1, *Chester* v. *Leonard,* 68 Conn. 495, 37 Atl. 397, and *State* v. *Spittler,* 79 Conn. 470, 65 Atl. 949. The questions in those cases were radically different from the question in the case now before us. It appears that in the first two of these cases there were important and material changes which destroyed the identity of the contract of guaranty. *State* v. *Spittler* was dealing with a joint and several bond which was given for two temporary receivers. One of these was afterward made permanent receiver. This action was brought against the surety of this bond for the misconduct of the permanent receiver after his appointment to this position. Aside

from this, the bond in the *Spittler* case was given for the honesty and fidelity of persons acting in a fiduciary capacity. It is said in the *Spittler* case that it is easy to understand that one might be willing to become surety for the faithful execution of a trust of two persons acting jointly, when he might be unwilling to accept that responsibility for one of them acting alone. The obligation in the latter case might be much more serious than in the former. It is of importance to notice that the guaranty in question is a general one, in that it was not made with any particular person. A guaranty of this character runs with the instrument upon which it is made and to which it expressly refers.

There is no merit in the contention of the defendant that the plaintiff should have made application of the different payments which were made to him by Jacob Mann, to the claim now under consideration. Where a debtor directs the manner in which his payment is to be applied, the creditor, if he accepts the payment, must apply it accordingly. As a general rule, where there are two or more debts, and a payment is voluntarily made by the debtor without any instruction as to its application, the creditor may apply it to whichever debt he pleases. The creditor may, under similar circumstances, apply it to an unsecured rather than a secured claim, or to a claim without a lien instead of a lien-claim. *Lewis* v. *Hartford Silk Mfg. Co.,* 56 Conn. 25, 12 Atl. 637; 30 Cyc. 1233, 1234.

The defendant insists that the plaintiff cannot recover, as there was not any privity of contract between the plaintiff and the defendant, as the contract of guaranty was a personal one between Rose A. Ward and the defendant. There is no ground upon which this contention can be supported. The rent due for the use of the premises was an incident to the reversion and was carried with it. The plaintiff, by force

of the conveyance of the property to him by Rose A. Ward, had the right to recover in his own name all rent which became due and payable subsequent to the conveyance of the property to him. The defendant, by payment of rent to the plaintiff under the terms of the lease, recognized the plaintiff's title. This right of a lessor to recover rent of the assignee of the lease is founded, not on contract, but on privity of estate. It is a general proposition, which has but few exceptions, that the transfer of a reversion carries with it the rent due and accruing thereafter by the lease creating the term, whether the assignment be by deed or mortgage. In a like manner, the plaintiff took the guaranty as an incident to this right to recover the rent. 2 Daniel on Negotiable Instruments (6th Ed.) § 1777; *McLaren* v. *Watson,* 26 Wend. (N. Y.) 425, 37 Amer. Dec. 260; *Stillman* v. *Northrup,* 109 N. Y. 473, 17 N. E. 379.

It is stated in *Allen* v. *Culver,* 3 Denio (N. Y.) 284, that "where a surety of a lessee by a separate covenant guarantees the payment of the rent and the performance of the covenants of the lease, such separate covenant passes to the grantee of the reversion, and enables him to maintain an action against the surety in his own name for a breach of his covenant." It follows, therefore, that the trial court properly directed a verdict for the plaintiff.

There is no error.

In this opinion the other judges concurred.