HUD/WILLOW STREET APARTMENTS *v.*
MARGARITA GONZALEZ

HUD/WILLOW STREET APARTMENTS *v.*
FELICITY RIVERA
(AC 21328)

Dranginis, Flynn and Daly, Js.

Argued December 13, 2001—officially released March 19, 2002

*David S. Stowe,* for the appellants (defendants).

*John A. Barbieri,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendant[1] in this summary process action, Margarita Gonzalez, appeals from the trial court's judgment of possession in favor of the plaintiff, HUD/Willow Street Apartments. Resolution of this appeal requires us to construe two separate and distinct but similarly numbered statutes. The first statute we refer to, General Statutes § 47a-23, applies to evictions generally. The second, General Statutes § 47a-23c, sometimes called the "good cause" eviction statute, applies to evictions involving a protected class of tenants, namely, those who are elderly, blind or disabled and who reside in a building that consists of five or more dwelling units. The dispositive issue in this appeal is whether the owner of an apartment building may rely

---

[1] A second tenant, Felicity Rivera, is the defendant in the companion case. The claims raised on appeal by each of the defendants are identical. For ease of reference, we refer to Margarita Gonzalez, the defendant in the first case, as the defendant.

on General Statutes § 47a-23 (a) (4) (B) as a valid reason for issuing a notice to quit possession to a tenant when the owner has neither alleged nor proved that the tenant whom it seeks to dispossess is a member of the class of tenants described in General Statutes § 47a-23c (a) (1). We answer that question in the negative and reverse the judgments of the trial court. We conclude that permanent removal of the rental unit from the housing market is not an authorized reason to dispossess a tenant under § 47a-23 (a) (4) (B) unless the eviction is commenced under the provisions of § 47a-23c, the "good cause" eviction statute, against an elderly, disabled or blind person residing in a building with five or more dwelling units.

The facts are not in dispute. The plaintiff, the owner of an apartment building located on Willow Street in New Britain, rented an apartment to the defendant.[2] On February 2, 2000, the plaintiff caused a notice to quit to be served on the defendant. The notice to quit provided that the defendant was to quit possession of her apartment on or before February 29, 2000. The reason for the notice to quit was stated as follows, on the first line, "Termination of lease" and on the line beneath that, "Building to be demolished." When the defendant failed to vacate the premises within the time provided, the plaintiff instituted a summary process action against the defendant pursuant to General Statutes § 47a-23a. In its complaint, the plaintiff alleged that the plaintiff and the defendant had entered into a written lease and that pursuant to the terms of the lease, the plaintiff could terminate the lease at any time and on any ground. The plaintiff further alleged that although a notice to quit had been served upon the defendant, she had failed to vacate the premises on or before the date provided

---

[2] We note that although the address set forth on the notice to quit was 42-A Willow Street, the address listed on the complaint was 26A Willow Street. The parties have not, however, raised this issue.

in the notice and, accordingly, it was seeking a judgment for possession of the premises as well as costs.

On May 10, 2000, the defendant filed a motion to dismiss the action. She argued that the court lacked subject matter jurisdiction over the action because the plaintiff had failed to serve her with a valid notice to quit pursuant to § 47a-23. Specifically, she argued that because service of a valid notice to quit is a condition precedent to the commencement of a summary process action and because the notice that the plaintiff caused to be served upon her was invalid, the court lacked subject matter jurisdiction over the action and, therefore, the action should be dismissed.

The plaintiff opposed the motion to dismiss, arguing that the notice to quit was valid pursuant to § 47a-23 (a) (4), the general eviction statute, which authorizes a landlord or owner to issue a notice to quit "when an action of summary process . . . to dispossess a tenant is authorized under subsection (b) of section 47-23c . . . [due to the] (B) permanent removal by the landlord of the dwelling unit of such tenant from the housing market . . . ." It argued that because the language that it used in the notice to quit, "Building to be demolished," simply means that the dwelling unit is to be removed permanently from the housing market, it had complied with the statutory requirements for issuing a valid notice to quit and, therefore, the motion to dismiss should be denied.[3]

The motion, which was not argued before the court but was, instead, submitted "on the papers," was denied by the court, *Tanzer*, *J.* Although the court did not file a memorandum of decision, the record reveals that the court's reason for denying the motion to dismiss was:

___

[3] General Statutes § 47a-23 (b) requires that the notice to quit set out the " 'reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import . . . .' "

"The reason stated in the Notice to Quit—'building to be demolished' is of and uses words of similar import to those in General Statutes § 47a-23'—permanent removal from the housing market."

Thereafter, the defendant filed an answer to the plaintiff's complaint in which she denied that she had entered into a written lease with the plaintiff. A written lease, if one existed, was not made a part of the record for purposes of this appeal. The defendant also filed a special defense. The special defense contained essentially the same allegations that formed the basis of the defendant's motion to dismiss, namely, that because the plaintiff had failed to serve her with a valid notice to quit, which is a condition precedent to maintaining an action for summary process, the court lacked subject matter jurisdiction and the action should be dismissed.

The case was set down for trial on October 18, 2000. Again, the defendant raised the issue of lack of subject matter jurisdiction. At trial, the court, *Crawford, J.*, gave the defendant the opportunity to reargue the jurisdictional issue, which it treated as a second motion to dismiss. After argument, the court denied the defendant's motion and rendered judgments of possession in favor of the plaintiff. This appeal followed.

On appeal, the defendant claims that the plaintiff's notice to quit was invalid because the reason that the notice set forth, "Termination of lease, Building to be demolished," is not one of the reasons set forth by § 47a-23 (a) for issuing a valid notice to quit possession and, therefore, that its action for summary process should have been dismissed because an invalid notice to quit cannot confer subject matter jurisdiction on the court.

Before turning to the merits of the issues raised on appeal, we review the law pertaining to summary process proceedings. "Summary process is a special statu-

tory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Citations omitted; internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 487–88, 733 A.2d 835 (1999). "As a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity." (Internal quotation marks omitted.) *Federal Home Loan Mortgage Corp.* v. *Van Sickle*, 52 Conn. App. 37, 44, 726 A.2d 600 (1999).

With these principles in mind, we turn to the issues raised in this appeal. The defendant first claims that the plaintiff's notice to quit was invalid because it failed to set forth one of the reasons listed in § 47a-23 (a), which reasons the defendant claims are the exclusive reasons for issuing such a notice. The plaintiff claims, to the contrary, that the reasons for issuing a notice to quit set forth in § 47a-23 (a) are not exclusive but, rather, that subsection (a) merely sets forth some of the reasons an owner may invoke in issuing a valid notice to quit. We agree with the defendant.

General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor . . . desires to obtain possession or occupancy of . . . any apartment in any building . . . and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons: (A) By lapse of time; (B) by reason of any expressed stipulation therein; (C) violation of the rental agreement or lease or of any rules or regulations adopted in accordance with section 47a-9 or 21-70; (D) nonpayment of rent within the grace

period provided for residential property in section 47a-15a or 21-83; (E) nonpayment of rent when due for commercial property; (F) violation of section 47a-11 or subsection (b) of section 21-82[4]; (G) nuisance, as defined in section 47a-32, or serious nuisance, as defined in section 47a-15 or 21-80; or (2) when such premises, or any part thereof, is occupied by one who never had a right or privilege to occupy such premises; or (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated; or (4) when an action of summary process or other action to dispossess a tenant is authorized under subsection (b) of section 47a-23c[5] for any of the following reasons: (A) Refusal to agree to a fair and equitable rent increase, as defined in subsection (c) of section 47a-23c, (B) permanent removal by the landlord of the dwelling unit of such tenant from the housing market, or (C) bona fide intention by the landlord to use such dwelling unit as such landlord's principal residence; or (5) when a farm employee . . . or a domestic servant, caretaker, manager or other employee . . . occupies such premises furnished by the employer and fails to vacate such premises after employment is terminated by such employee or the employer or after such employee fails to report for employment, such owner or lessor . . . shall give notice to each lessee or occupant to quit possession or occupancy of such . . . apartment . . . at least three days before the termination or the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

[4] These sections detail the tenant's responsibilities to comply with any applicable health and safety codes, by keeping the dwelling unit clean and safe, and to use the property only as a dwelling unit.

[5] General Statutes § 47a-23c is the good cause eviction statute, which protects elderly, disabled or blind persons who reside in an apartment house with five or more dwelling units.

The plaintiff's argument, that the list of reasons set forth in § 47a-23 (a) is not an exclusive list, is at odds with the principles of our summary process jurisprudence, which mandates that the summary process statutes be strictly and narrowly construed. See *Young* v. *Young*, supra, 249 Conn. 487–88, and the cases cited therein.

It is also at odds with well established rules of statutory construction. First, "[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.) *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 101, 653 A.2d 782 (1995). The plaintiff in the present case does not point to any language contained in § 47a-23 (a) that can fairly be read to indicate that the legislature did not intend the reasons for issuing a notice to quit that it set forth in § 47a-23 (a) to be exclusive. Further, § 47a-23 (a) sets forth in great detail the reasons that an owner may rely on in issuing a valid notice to quit. It is difficult to believe that the legislature would go to such lengths in describing those reasons if it did not intend the reasons it set forth to be exclusive.

Second, it is a basic tenet of statutory construction that a statute should be read as a whole and that care should be taken to give effect to all of its provisions. *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 588–89, 775 A.2d 284 (2001). The plaintiff claims that the reasons set forth in § 47a-23 (a) are not exclusive; yet, subsection (b) of that section, which prescribes the form that a notice to quit must take, requires that the reason for the notice to quit be specifically provided " 'using the statutory language or words of similar import . . . .' " If an owner were to rely on a reason that is not set forth in subsection (a) of § 47a-23 to issue a notice to quit, the owner could not comply with subsection (b) of that same section because the

owner would be unable to set forth on the notice the " 'statutory language or words of similar import' " indicating the reason for the issuance of the notice.

We conclude that the reasons for issuing a notice to quit set forth in § 47a-23 (a) are exclusive. They are the only reasons that an owner may rely on for issuing a valid notice to quit.

The defendant next claims that the provisions of subdivision (4) of § 47a-23 (a) apply exclusively to the protected class of tenants set forth in § 47a-23c and, therefore, a notice to quit may properly issue under § 47a-23 (a) (4) only when the owner has first proved that the tenant whom it seeks to dispossess is a tenant who resides in a building that contains five or more dwelling units and is either elderly, blind or disabled, as provided by § 47a-23c (a) (1). She claims that because the plaintiff in the present case has failed to offer proof that the defendant meets the criteria set forth in § 47a-23c (a) (1), it may not properly invoke § 47a-23 (a) (4) (B) as a valid reason for issuing its notice to quit. She further claims that because the plaintiff's notice to quit was not authorized under § 47a-23 (a) (4) (B), it was invalid and, therefore, insufficient to confer subject matter jurisdiction on the court.

The plaintiff claims that § 47a-23 (a) (4) (B) is applicable to any and all tenants whom an owner seeks to dispossess by virtue of the fact that it is contained in § 47a-23 (a), which applies to evictions of tenants generally. In addition, it claims that the interpretation advanced by the defendant, that § 47a-23 (a) (4) (B) may only be invoked to dispossess tenants described in § 47a-23c (a) (1), would lead to an incongruous result because it would allow owners who intend to remove a dwelling unit from the housing market to evict tenants who are members of the protected class of tenants pursuant to § 47a-23c but would not allow them to evict

other, unprotected tenants for that same reason. The plaintiff claims that such an interpretation contravenes the legislative purpose of § 47a-23c, which is to provide the elderly, blind and disabled with additional protections against evictions and not to arm landlords and owners with additional reasons to evict such tenants. We agree with the defendant because we find her interpretation consistent with the balance the legislature struck between the rights of landlords and the rights of protected tenants.

Resolution of this issue requires us to examine two statutes, § 47a-23 (a), the general eviction statute, and § 47a-23c, the "good cause" eviction statute. In doing so, we rely on well established principles of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Young* v. *Young*, supra, 249 Conn. 489–90.

"Generally speaking, the presumption is that the words of a statute are used in their ordinary sense. Nonetheless, there should be inquiry as to the legislative intent, involving a consideration of the language used, its context, pertinent antecedent legislative history, related subject matters with which the language deals, its operation as it may be interpreted, the conditions and circumstances under which it was enacted, and all other matters calculated to throw light on the subject." 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 50, p. 222.

With those principles of statutory construction in mind, we turn first to the language of the statutes that are central to this appeal.

In issuing its notice to quit, the plaintiff in the present case relied on the authority of § 47a-23 (a) (4), which permits an owner or lessor to issue a notice to quit "when an action of summary process or other action to dispossess a tenant is authorized under subsection (b) of section 47a-23c . . . ." The prefatory language used in subdivision (4) of § 47a-23 (a), "when . . . authorized under subsection (b) of section 47a-23c," makes it clear that use of subdivision (4) of § 47a-23 (a) as a reason for issuance of a notice to quit is *not* available in all summary process actions. By its terms, it may be invoked to dispossess a tenant only when a summary process action is authorized by § 47a-23c (b). Accordingly, we turn to the language of § 47a-23c (b) to determine which summary process actions that section authorizes.

Subsection (b) of § 47a-23c provides in relevant part: "(1) No landlord may bring an action of summary process . . . to dispossess *a tenant described in subsection (a) of this section* except for one or more of the following reasons: (A) Nonpayment of rent; (B) refusal to agree to a fair and equitable rent increase, as defined in subsection (c) of this section; (C) material noncompliance with section 47a-11 or subsection (b) of section 21-82, which materially affects the health and safety of the other tenants or which materially affects the physical condition of the premises; (D) voiding of the rental agreement; (E) material noncompliance with the rules and regulations of the landlord adopted in accordance with section 47a-9 or 21-70; (F) permanent removal by the landlord of the dwelling unit of such tenant from the housing market; or (G) bona fide intention by the landlord to use such dwelling unit as his principal residence." (Emphasis added.) Again, by its terms, the pref-

atory language in the statute, "to dispossess a tenant described in subsection (a)," indicates that subsection (b) of § 47a-23c is limited to evictions involving tenants described in subsection (a).

Subsection (a) of § 47a-23c, in turn, provides in relevant part: "(1) Except as provided . . . this section applies to any tenant who resides in a building or complex consisting of five or more separate dwelling units . . . and who is either: (A) Sixty-two years of age or older, or whose spouse, sibling, parent or grandparent is sixty-two years of age or older and permanently resides with that tenant; (B) blind . . . or (C) physically disabled . . . ."

On the basis of the statutory language of both § 47a-23 (a) (4) and § 47a-23c, we conclude that an owner may not properly rely on § 47a-23 (a) (4) to issue a notice to quit to any and all tenants simply because subdivision (4) has been incorporated in the general eviction statute. The prefatory language of subdivision (4) clearly indicates that the legislature intended that subdivision to apply only to summary process actions authorized by § 47a-23c (b), the "good cause" statute, and only to the protected class of tenants described in § 47a-23c (a).

We now turn to the legislative history of § 47a-23c, the circumstances surrounding its enactment and the policy that that section was designed to implement, which we conclude, despite the plaintiff's assertions to the contrary, support our interpretation of the limited applicability of § 47a-23 (a) (4).

The plaintiff contends that our interpretation that § 47a-23 (a) (4) is of limited applicability is in contravention of the legislative purpose of § 47a-23c. It contends that such an interpretation will serve to allow the elderly, blind and disabled, members of the protected class of tenants, to be evicted when an owner chooses

to remove permanently a dwelling unit from the housing market but will not allow an owner to evict other tenants, those not entitled to the protections of § 47a-23c, for that reason. We disagree that our interpretation that an owner may properly invoke § 47a-23 (a) (4) to issue a notice to quit only when the owner seeks to dispossess a tenant described in § 47a-23c (a) (1) is at odds with the legislative purpose of § 47a-23c. On the contrary, we conclude that our interpretation of § 47a-23 (a) (4) is in keeping with the legislative balancing of countervailing rights for which the statutory scheme expressly provides.

The legislature has not conferred blanket immunity from eviction on elderly, disabled or blind tenants. Section 47a-23c is entitled "Prohibition on eviction of certain tenants except for good cause." In enacting this good cause eviction statute, the legislature sought to protect elderly, blind and physically disabled tenants from evictions, other than those that were instituted for good cause. *First Federal Bank, FSB* v. *Whitney Development Corp.*, 237 Conn. 679, 684–85, 677 A.2d 1363 (1996). This legislation was enacted at a time when property owners were rushing to convert their apartment buildings into condominiums, which elderly or disabled tenants on fixed incomes could not afford to purchase from the owners,[6] leaving these persons displaced from their homes during a period in time when Connecticut was facing a serious shortage of rental housing.[7]

---

[6] "What we are talking about . . . is often widows, over age seventy-five, living on modest, fixed incomes, who have been living in a building or apartment for ten to fifteen years since their husband died and who often cannot afford to buy condominiums." 23 S. Proc., Pt. 5, 1980 Sess., p. 1394, remarks of Senator Clifton A. Leonhardt.

[7] The legislation "says that it is in the public interest to preserve a number of dwelling units as rentals for those persons who because of increasing age, infirmity or other functional limitations are least likely to be able to afford to purchase housing and are most susceptible to mental and physical health problems that may result from the trauma of being forced to search for housing in a market where the vacancy rate for residential rental units

The legislative history of § 47a-23c is replete with references to the fact that the statute was intended to balance the legislature's desire to protect such tenants from being displaced from their homes against its desire to preserve the rights of property owners.[8] To effectuate this intent, the legislature recognized that there had to be a counterbalancing of rights.[9] We conclude that § 47a-23 (a) (4), permitting a notice to quit for the reason that the owner intends to remove permanently the unit of a protected tenant from the housing market, is simply a means of achieving that counterbalance.

For example, section 47a-23c provides sweeping protections to the elderly, blind and disabled. Unlike § 47a-23 (a), which applies to evictions generally and allows owners to issue a notice to quit to a tenant upon termination of the lease, owners that rent to protected tenants may not terminate the leases of such tenants.[10] Also, subsection (c) of § 47a-23c places further restraints on those owners because it provides for a form of rent control; it states that the rent of a protected tenant "may be increased only to the extent that such increase

is approaching zero in many localities." 23 S. Proc., Pt. 5, 1980 Sess., p. 1430, remarks of Senator Sanford Cloud, Jr.

[8] "What we are balancing here are the rights of landlords which have been talked about and explained very well and the needs of tenants. It's a delicate balance. . . . [T]his is a prudent and balanced reform which looks upon those needs and those rights and deals with them in a very responsible fashion." 23 S. Proc., Pt. 5, 1980 Sess., p. 1420, remarks of Senator William E. Curry, Jr.; see also remarks of Senator Eugene A. Skowronski: "I strongly feel that there has been a very sincere and diligent effort to come up with a bill which I recognize a need [for], an attempt to find some reasonable, moderate, middle, fair ground on this thing . . . ." 24 S. Proc., Pt. 7, 1980 Sess., p. 2099. "We think this is well balanced. There are some aspects of it which some of us would like to have stronger, some would like to have weaker. A number of us have made compromises." 23 H.R. Proc., Pt. 18, 1980 Sess., p. 5316, remarks of Representative Richard D. Tulisano.

[9] See footnote 8.

[10] "Termination of lease is, in effect, what is removed from the statutes as to the protected classes." 23 H.R. Proc., Pt. 18, 1980 Sess., p. 5379, remarks of Representative Richard D. Tulisano.

is fair and equitable . . . ." It deems municipal fair rent commissions, or when a municipality has not established a fair rent commission, the Superior Court, the final arbiter of what is a "fair and equitable" rent.[11] Without the exceptions set forth in subsection (b) of § 47a-23c, the "good cause" statute, as a whole, would be too great an infringement on the rights of property owners.[12] Without the ability to oust elderly, blind or disabled tenants by terminating their lease and using the property for other nonhousing purposes, property owners could conceivably be saddled with a building that they must continue to rent to a protected tenant at a rate that some third party deems to be "fair and equitable," rather than at a rate that the market would bear, thereby giving them the economic return they need to service mortgages, taxes and other similar expenses.[13] General Statutes § 47a-23c (b) (1) (F), which has been incorporated in § 47a-23 (a) as subdivision (4) (B), attempts to balance the rights given to protected tenants by giving an owner the option of removing a rental unit from the housing market when it is no longer economically feasible to rent to such tenants, or for other reasons.[14]

We conclude that the legislative history of § 47a-23c demonstrates that "permanent removal . . . of the dwelling unit . . . from the housing market" as a reason for a notice to quit under § 47a-23 (a) (4) (B) was intended to apply only as a reason to be invoked against a member of the protected class of tenants because it acts to offset the extensive rights that are bestowed on

[11] See General Statutes § 47a-23c (c) (2).

[12] See 23 H.R. Proc., Pt. 18, 1980 Sess., pp. 5324–31.

[13] See footnote 12.

[14] See remarks of Representative John A. Berman, explaining that there are "some escape hatches in the bill because what we say . . . is that a landlord can refuse to rent to the elderly and so on if he intends to permanently remove the housing from the market." 23 H.R. Proc., Pt. 18, 1980 Sess., p. 5388.

only those tenants set forth in § 47a-23c (a) (1).[15] Owners seeking to dispossess tenants who do not fall within the protected class have a number of statutory reasons they can invoke to evict an unprotected tenant. See General Statutes § 47a-23 (a) (1)-(3). They do not need, and are not entitled, to invoke the additional reasons set out in § 47a-23 (a) (4), which reasons represent the balance the legislature struck between the rights of protected tenants and property owners, because they are not faced with the same restraints such as the inability to terminate a lease or to raise rents as they see fit. Owners evicting the unprotected class of tenants are, therefore, not entitled to the countervailing right to evict such unprotected tenants for reasons applicable only to elderly, blind or disabled tenants who reside in a building consisting of at least five dwelling units.

We also disagree with the plaintiff's contention that an owner could *never* issue a valid notice to quit where it seeks to evict an unprotected tenant for the reason that it intends to remove permanently that tenant's dwelling unit from the housing market. General Statutes § 47a-23 (a) sets out five separate categories of reasons for issuing a valid notice to quit, one of which is "when a rental agreement . . . whether in writing or by parol, terminates . . . by reason of any expressed stipulation therein." There is nothing in that language that prevents a prudent landlord or owner from employing that section to provide in its lease that when the owner or landlord intends to remove permanently the dwelling unit from the housing market, the lease shall terminate.

In any event, "[i]t is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly

---

[15] For a tenant to qualify for the benefits of subsection (b), "each of the requirements must be met. No single one is sufficient to put you into the protected class." 23 S. Proc., Pt. 7, pp. 2099–2100, remarks of Senator Clifton A. Leonhardt.

stated." (Internal quotation marks omitted.) *Corcoran* v. *Taylor*, 65 Conn. App. 340, 344, 782 A.2d 728, cert. denied, 258 Conn. 925, 783 A.2d 1027 (2001). Where, as here, the legislature has used prefatory language to indicate that § 47a-23 (a) (4) only applies in summary process actions authorized by § 47a-23c (b), we will not read into that statute a provision that makes it applicable in all summary process actions.[16]

In the present case, the plaintiff relied on § 47a-23 (a) (4) (B) but neither alleged in its complaint nor offered any proof at trial that the defendant was a member of the class of tenants described in § 47a-23c (a) (1) or that summary process was authorized by § 47a-23c (b). Consequently, we conclude that the plaintiff's notice to quit fails to set forth one of the reasons authorized by § 47a-23 (a) for issuing such a notice and it is, therefore, invalid. We further conclude that because a valid notice to quit is a condition precedent to instituting a summary process action the court lacked subject matter jurisdiction over the plaintiff's summary process action.

The judgments are reversed and the cases are remanded with direction to render judgments dismissing the plaintiff's complaints.

In this opinion the other judges concurred.

---

[16] The reason that subdivision (4) appears at all in General Statutes § 47a-23, the general eviction statute, is to give landlords and owners commencing good cause evictions pursuant to General Statutes § 47a-23c access to the summary process statute. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 10, 1995 Sess., p. 3356, statement of Raphael L. Podolsky, an attorney for the Legal Assistance Resource Center of Connecticut, Inc., regarding House Bill 6966, which added subdivision (4) to § 47a-23 (a) ("Section 1 [a] [4] adds to [General Statutes] § 47a-23 a list of grounds for eviction which already appear in [General Statutes] § 47a-23c concerning the eviction of elderly and disabled renters. There is some disagreement as to whether it is necessary to restate them in § 47a-23. The section resolves the dispute.").