# SOUTH SEA COMPANY, INC. *v.* GLOBAL TURBINE COMPONENT TECHNOLOGIES, LLC
## (AC 26626)

Schaller, Bishop and Dupont, Js.

Argued February 23—officially released June 6, 2006

*Rodger C. Boe*, for the appellant (plaintiff).

*Rebecca B. Lamont*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, South Sea Company, Inc., appeals from the judgment of the trial court, rendered following the granting of the motion filed by the defendant, Global Turbine Component Technologies, LLC, to dismiss the plaintiff's summary process complaint. The defendant contended in its motion that the court had no jurisdiction because the notice to quit possession served on the defendant on October 29, 2004, for "nonpayment of rent when due" was premature. We reverse the judgment of the trial court.

Although the defendant filed a motion to dismiss on the basis of a lack of jurisdiction, neither the parties nor the court treated the case as one involving a dispute as to either personal or subject matter jurisdiction, neither of which was disputed during the hearing held by the court. In this case, the plaintiff landlord served a notice to quit possession on October 29, 2004, giving notice to the defendant tenant to quit possession of the leased premises on or before November 3, 2004, for nonpayment of rent when due and giving notice that if the defendant had not moved from the premises by then, an eviction action may be initiated. A complaint seeking a judgment for immediate possession, dated November 4, 2004, was filed, with a return date of November 15, 2004. The defendant did not answer the complaint but instead filed a motion to dismiss on November 15, 2004, claiming that the notice to quit was ineffective because it was served after the defendant had "tendered rent," and, therefore, the court was "without jurisdiction . . . ."

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented

by the action before it." (Internal quotation marks omitted.) *Rock Rimmon Grange # 142, Inc.* v. *The Bible Speaks Ministries, Inc.*, 92 Conn. App. 410, 413, 885 A.2d 768 (2005). "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 291, 869 A.2d 1193 (2005).

Although a notice to quit is a condition precedent to instituting a summary process action, no claim is made by either party that any of the statutory requirements for the action were lacking. Compare *HUD/Willow Street Apartments* v. *Gonzalez*, 68 Conn. App. 638, 643, 792 A.2d 165 (2002), and *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 582, 548 A.2d 744, cert. denied, 209 Conn. 826, 552 A.2d 432 (1988). General Statutes § 47a-23 (a) provides in relevant part that "[w]hen the owner or lessor . . . desires to obtain possession . . . and (1) when a . . . lease of such property, whether in writing or by parol, terminates for any of the following reasons . . . (E) nonpayment of rent when due for commercial property . . . such owner or lessor . . . shall give notice to each lessee . . . to quit possession . . . at least three days before termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy." General Statutes § 47a-23 (b) provides in relevant part that "[t]he notice shall

be in writing substantially in the following form: 'I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment or dwelling unit, or of any trailer or any land upon which a trailer is used or stands, as the case may be), now occupied by you at (here insert the address, including apartment number or other designation, as applicable), on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import, also the date and place of signing notice). A.B.' . . ."

There is no question that the plaintiff complied with both subsections of the statute. A motion to dismiss, claiming lack of jurisdiction because of a defective notice, must be denied if there has been compliance with the statute. Cf. *Thomas E. Golden Realty Co.* v. *Society for Savings*, 31 Conn. App. 575, 579–80, 626 A.2d 788 (1993). The court decided this matter on the briefs submitted by the parties, the documentary evidence, and the stipulation of facts and the supplementary stipulation of facts signed by both parties. Nowhere are there any allegations that the plaintiff's notice to quit possession was statutorily defective. Nowhere in the court's memorandum of decision is the word "jurisdiction" ever used. Had this case solely involved jurisdiction, the motion to dismiss would, as a matter of law, be denied. The question decided by the court was not one of jurisdiction but whether the plaintiff was entitled to possession because of a nonpayment of rent.

Ordinarily, the determination of whether subject matter jurisdiction exists docs not permit a court to determine the merits of the case. See *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 117, 891 A.2d 106 (2006). The power to hear and determine the particular class of case, which relates to jurisdiction, should not be confused with the way in which the power should be exercised pursuant

to a statute. *Misinonile* v. *Misinonile*, 190 Conn. 132, 136, 459 A.2d 518 (1983); see also *Cilley* v. *Lamphere*, 206 Conn. 6, 15, 535 A.2d 1305 (1988). This case was tried and decided on the basis of the argument of the parties and a stipulation of facts relating to (1) whether a check from the defendant was a tender of "unpaid additional fixed rent" and (2) whether any unpaid rent was due prior to the service of notice to quit possession. Because jurisdiction existed and a remand for further proceedings to allow the defendant to answer the complaint is not warranted in this case,[1] we conclude that we should review the merits of the claims of the parties.

The relevant facts and procedural background of this case are included in a stipulation of facts and a supplemental stipulation of facts signed by the plaintiff and the defendant. The parties executed a written lease of commercial property that contained an option to the defendant, as lessee, to renew it for a five year period, an option that the defendant exercised. Under the original terms of the lease, the defendant was to pay a fixed rent of $4300 per month. On January 1, 2004, by letter agreement, the fixed rent was increased to $5188 per month.[2] Under the amended terms of the lease, the fixed rent was due, in advance, on the first day of each month, and the lease was to terminate on July 31, 2004. Under

---

[1] "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enables a landlord to obtain possession of leased premises without the delay associated with common-law actions." (Citation omitted; internal quotation marks omitted.) *Western Boot & Clothing Co.* v. *L'Enfance Magique, Inc.*, 81 Conn. App. 486, 490, 840 A.2d 574, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). The expediency aspect of the statute and the principle of judicial economy would be thwarted if we did not review the merits of the case. See *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 332, 880 A.2d 106 (2005); *State* v. *Hamilton*, 228 Conn. 234, 246, 636 A.2d 760 (1994); see also *Allstate Ins. Co.* v. *Appell*, 39 Conn. Sup. 85, 88, 468 A.2d 949 (1983).

[2] This was the last of several amendments to the original lease. Because the prior amendments have no relevance to the present appeal, we need not discuss them.

the terms of the option, the fixed rent for the renewal period was to increase on the basis of the consumer price index.[3] On August 18, 2004, and again on October 18, 2004, the plaintiff sent letters to the defendant outlining the exact calculation of the increased additional fixed rent. Despite owing additional fixed rent, the defendant sent checks in the amount of $5188, the fixed monthly rent prior to renewal, as payment for the August, September and October, 2004 rent. The defendant also mailed a check, dated October 28, 2004, in the amount of $5188 to the plaintiff in an envelope dated October 29, 2004. The plaintiff returned the check to the defendant on November 2, 2004.

A dispute regarding the amount of the additional fixed rent due under the option existed between the parties. This dispute involved two different interpretations of the lease. The plaintiff contends that the defendant owed an additional fixed rent of $965.05 per month, on the basis of an increase in the cost of living from the beginning of the original lease. According to the defendant, it owed only $668 per month, on the basis of an increase in the cost of living from the first amendment to the lease, dated August 1, 1999. The parties agree that the only rent due and owing from the defendant, as of October 27, 2004, was the additional fixed rent for the months of August, September and October, 2004. As of October 28, 2004, the monthly rent for November was not yet due. They also agree that, as of October 28, 2004, the amount of unpaid additional fixed rent for three months was less than $5188. The check dated October 28, 2004, in the amount of $5188, had a notation on it, "PE 10-04." The defendant intended by it to pay the fixed rent due for November, 2004. On October 29, 2004, the plaintiff issued a notice to quit possession and served the notice on the defendant's president.

---

[3] In this opinion, we will refer to the difference between the rent prior to renewal and the rent after the renewal as "additional fixed rent."

The stipulation of the parties included letters from the defendant's attorney dated November 1, 2004, and November 4, 2004. In the first letter, he stated that arrearages for August, September, October and November "in the amount you have claimed will be paid by November 10, 2004 under separate cover. These payments are being made without prejudice. . . . My client will continue to pay the rent with arrearages as you have calculated. If a court determines that our interpretation is right, we will have a claim for damages. If not, your client will have no damages and, therefore, cannot attempt to evict." The second letter was sent with a check for the disputed amount, namely, $3860, and acknowledged the return of the defendant's check dated October 28, 2004.[4]

The stipulation also included letters faxed from the plaintiff's attorney, dated August 18, 2004, and October 18, 2004. The first letter included United States Department of Labor statistics data and outlined the plaintiff's calculation of the amount of rent due as of August 1, 2004. The letter dated October 18, 2004, in pertinent part, stated as follows: "On August 18, 2004, I faxed you a letter concerning the increase in rent. Enclosed is a copy of that letter with confirmation that it was received by you. My client has informed me that, in spite of the notice and your obligation to pay the rent, to date it has not received the additional rent required. Please contact me if you have questions or if there is a problem concerning payment. If not, my client would expect payment of the arrearages forthwith." The defendant's attorney responded to the letter on October 20, 2004, outlining the difference of the parties in the calculation of the additional cost of living increase in the rent due and stating the amount the defendant believed

---

[4] The check issued by the defendant in the amount of $3860 was in payment of the disputed additional fixed rent for the months of August, September, October and November, 2004.

was due. The letter ended with the statement, "There is no problem with the arrearages based on this amount." Despite the latter statement, the next check mailed to the plaintiff was for the usual $5188. The defendant claims that the amount was more than the additional fixed rent for August, September and October, 2004, and that, as of October 29, 2004, there was no rent due because the November rent was not due until November 1, 2004. It is the defendant's claim that on October 29, 2004, when the plaintiff served the notice to quit possession, the defendant was not yet in arrears. The defendant's comptroller testified that "PE 10-04" meant "period ending October '04" and that the check was for November rent. The plaintiff's attorney testified that he received the check dated October 28, 2004, on November 1, 2004, at his office, where the rent was directed to be paid by the lease.

The issue is whether the plaintiff, as lessor, could apply the check dated October 28, 2004, to either the basic rent or to the additional fixed rent past due for the months of August, September and October. If the plaintiff had to apply the check to the disputed portion of the rent, at the time the notice to quit possession was served and the November rent was not yet due, then the plaintiff would not be entitled to possession. If, however, the plaintiff was required, or was permitted, to apply it to the November rent, there would be rent due in the disputed amount for the three previous months, and the notice to quit possession would not be premature, entitling the plaintiff to obtain possession.

The plaintiff asserts that the check did not constitute a tender of the past due additional fixed rent. In support of its claim, the plaintiff claims that all of the facts and circumstances surrounding the plaintiff's receipt of the check indicate that the defendant directed that it be applied to the November rent obligation and not to the disputed additional fixed rent that had gone unpaid for

the months of August, September and October. The plaintiff argues that the subsequent facts confirm this interpretation of the circumstances surrounding its receipt of the check. Specifically, the plaintiff refers to the fact that the defendant's attorney, in a letter dated November 1, 2004, identified the check as "November's rent" and, later, a check was sent on November 4, 2004, specifically to pay the disputed additional fixed rent. The defendant claims that, despite its intention that the check be applied to the November rent obligation, there was nothing that the defendant did and nothing written on the check that would preclude the plaintiff from directing it toward the past due additional fixed rent.

Because the parties have stipulated to the facts, we review their claims de novo. "[T]he legal inferences properly to be drawn from [a] definitive stipulation of facts raise questions of law rather than of fact. . . . When an issue on appeal concerns a question of law . . . this court reviews that claim de novo." (Citation omitted; internal quotation marks omitted.) *Heise* v. *Rosow*, 62 Conn. App. 275, 278–79, 771 A.2d 190, cert. denied, 256 Conn. 918, 774 A.2d 137 (2001).

Where a debtor has two or more obligations to the same creditor, the debtor possesses the power to direct the manner in which his payment is to be applied. See *Sagal* v. *Mann*, 89 Conn. 576, 581, 95 A. 6 (1915); 2 Restatement (Second), Contracts § 258 (1) (1981).[5] "The obligor must manifest his direction to the obligee, but he need not manifest it in words. A direction may be

[5] Comment (a) provides in relevant part: "As a general rule, an obligor has the power to direct the obligee's application of a payment or other performance. The direction is effective immediately on the obligee's acceptance of the performance, the performance is considered to be applied as directed, and the obligor's duty is discharged accordingly. . . . The obligor can effectively direct that a performance be applied to a duty that is not matured, to one that is unsecured, and even to one that is unenforceable on grounds of public policy." 2 Restatement (Second), supra, § 258, comment (a).

inferred from other circumstances, including the performance itself. It is often clear from the nature of the performance that it is to be applied to a particular duty. . . . In resolving doubts as to whether a direction has been made, the fact that one application is obviously more advantageous to the obligor than another is a factor to be given weight. In extreme situations a particular application may be so disadvantageous to the obligor that it is not permitted to the obligee even absent a contrary direction by the obligor." 2 Restatement (Second), supra, § 258, comment (b).

The court found and the parties agree that "[w]hen the defendant sent the check dated October 28, 2004, to the plaintiff, it intended to pay the fixed rent due for November, 2004, but [the check] did not include the disputed " 'additional fixed rent.' " Under the circumstances in this case, the plaintiff could infer only that the defendant was directing the plaintiff to apply the check to the defendant's November rent obligation.[6] Prior to August 1, 2004, the monthly fixed rent due under the lease was $5188. On August 1, 2004, the monthly fixed rent increased by an amount, which is disputed by the parties. Despite agreeing that it had an increased obligation as of August 1, 2004, the defendant sent checks in the amount of $5188 for the purpose of paying rent for the months of August, September and October. The defendant sent a check in the amount of $5188, less than its obligation, for August. The plaintiff notified the defendant of its failure to pay the full August obligation. The defendant, nevertheless, sent a check

---

[6] We note that the rectitude of this inference was later supported by the letter from the defendant's attorney dated November 1, 2004, as well as the papers filed by the defendant in the trial court and in this court. In this letter, the defendant's attorney stated that the check received by the plaintiff was for November rent and that a check for the disputed additional rent for August, September, October and November would be forthcoming. In its court filings, the defendant admits that it intended that the check be applied to its November rent obligation.

in the amount of $5188, less than its obligation, for September and October. In October, the plaintiff again notified the defendant of its failure to pay its full obligation for August, September and October. Having not received any of the additional fixed rent under the lease,[7] the plaintiff caused a notice to quit possession to be served on the defendant on October 29, 2004. In an envelope, which was postage stamped October 28, 2004, and date stamped October 29, 2004, the defendant sent a check in the amount of $5188.

It was clear from the nature of the defendant's performance that the check was to be applied to its November rent obligation. The facts of this case leave no doubt as to whether the defendant directed the plaintiff to apply the check to a particular obligation. In their course of dealing, the defendant sent checks to the plaintiff in the amount of $5188 in three prior months. The plaintiff applied each check to the defendant's monthly rent obligation. As the months passed, the defendant's debt for additional fixed rent accrued. In two letters, the plaintiff notified the defendant of his failure to pay the additional fixed rent. Despite having information that the plaintiff was applying the checks to the defendant's basic rent obligation for the next month, the defendant failed to give the plaintiff a contrary direction with regard to which obligation his checks should be applied. In fact, the defendant openly admits that it intended that the check be applied to the November rent obligation.

---

[7] In a letter dated October 20, 2004, the defendant's attorney admitted that the defendant was responsible for arrearages, but disputed the amount of those arrearages. The defendant claimed that the option rent increase related back to 1999 rather than 1996, resulting in a monthly rent of $5856 instead of the $6152.05 monthly rent claimed by the plaintiff. Despite being aware that it had past due additional fixed rents, at no time did the defendant claim that the plaintiff applied the prior checks to the rental obligation for the next month inappropriately.

Because there is no ambiguity as to whether the defendant directed the plaintiff to apply the October 28, 2004 check to the November rent obligation, we need not consider the fact that applying the check to the disputed additional fixed rent would have been more advantageous to the defendant. Furthermore, the defendant fails to make any argument as to why these circumstances should be considered so extreme that the particular application should not be permitted. The defendant, in fact, argues only that the plaintiff was free to apply the check to the past due additional rents. The law does not permit the creditor to override the direction of the debtor. See *Sagal* v. *Mann*, supra, 89 Conn. 581; 2 Restatement (Second), supra, § 258 (1). As such, the check, dated October 28, 2004, did not constitute a tender of the additional fixed rent. Furthermore, the letters of the plaintiff to the defendant made it clear that rent in the disputed amount was due and owing, at least since August 1, 2004, and the defendant acknowledged that an additional sum, albeit disputed, was due and owing as of October 20, 2004. The notice to quit possession was not premature. Because there are no other contested issues of fact, the plaintiff is entitled to judgment as a matter of law.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.